UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC S. KIRSCHNER, solely in his capacity as Trustee of THE MILLENNIUM LENDER CLAIM TRUST, | **ORDER** |
| Plaintiff, | 17 Civ. 6334 (PGG) |
| - against - | |
| JPMORGAN CHASE BANK, N.A.; JPMORGAN SECURITIES LLC; CITIGROUP GLOBAL MARKETS INC.; CITIBANK, N.A.; BMO CAPITAL MARKETS CORP.; BANK OF MONTREAL; SUNTRUST ROBINSON HUMPHREY, INC.; and SUNTRUST BANK, | |
| Defendants. | |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Marc S. Kirschner – in his capacity as trustee of the Millennium Lender

Claim Trust (the "Trust") – brings this action against J.P. Morgan Chase Bank, N.A. ("Chase"),

J.P. Morgan Securities LLC ("JPM Securities," with Chase, "JP Morgan"), Citibank, N.A.

("Citibank"), Citigroup Global Markets, Inc. ("CitiGlobal," with Citibank "Citi"), Bank of

Montreal, BMO Capital Markets Corp. (together "BMO"), SunTrust Bank, and SunTrust

Robinson Humphrey, Inc. (together "SunTrust") (collectively, "Defendants").  The Complaint

alleges violations of various state securities laws; negligent misrepresentation; breach of

fiduciary duty; breach of contract; and breach of the implied covenant of good faith and fair

dealing.  (Cmplt. (Dkt. No. 1-1))

Plaintiff's claims arise out of a $1.775 billion syndicated loan transaction[1] that closed on April 16, 2014 (the "2014 Transaction" or "2014 Credit Agreement").  (Id. ¶¶ 1, 96) In the 2014 Transaction, Defendants sold to the Trust's beneficiaries – approximately seventy institutional investor groups, comprised of approximately 400 mutual funds, hedge funds, and other institutional investors (the "Investors") – debt obligations of Millennium Laboratories LLC ("Millennium").  (Id. ¶¶ 1, 94-95)

In November 2015 – nineteen months after the 2014 Transaction closed – Millennium filed a bankruptcy petition.  (Id. ¶ 3)  The bankruptcy plan issued by the Bankruptcy Court created the Trust and authorized the Trust to pursue the Investors' claims against Defendants.  (Id. ¶ 8)

The Complaint alleges that "Defendants misrepresented or omitted . . . material facts in the offering materials they provided and communications they made to Investors concerning the legality of [Millennium's] sales, marketing, and billing practices," as well as "the known risks posed by a pending government investigation into the illegality of such practices." (Id. ¶ 1)

In a May 22, 2020 opinion (the "May 22, 2020 Opinion"), this Court granted Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), but gave Plaintiff leave to amend. See generally Kirschner v. JP Morgan Chase Bank, N.A., No. 17 Civ. 6334 (PGG), 2020 WL 2614765 (S.D.N.Y. May 22, 2020).

On July 31, 2020, Plaintiff moved for leave to file an amended complaint.  (Mot.

---

[1]  "A syndicated loan is a commercial credit provided by a group of lenders," and "is structured, arranged, and administered by one or several commercial or investment banks, known as arrangers."  S&P Global Market Intelligence, Syndicated Loans:  The Market and the Mechanics 1 (2017), https://www.lcdcomps.com/d/pdf/LCD%20Loan%20Primer.pdf.

(Dkt. No. 132))  The Proposed Amended Complaint ("PAC") asserts common law fraud claims against JP Morgan and Citi, and aiding and abetting fraud, conspiracy to commit fraud, and negligent misrepresentation claims against all Defendants.  (See generally PAC (Dkt. No. 134-1))

On August 12, 2020, this Court referred Plaintiff's motion to Magistrate Judge Sarah L. Cave for a Report and Recommendation ("R&R").  (Dkt. No. 148)  On December 1, 2020, Judge Cave issued a forty-two page R&R recommending "that Plaintiff's Motion be denied on grounds of futility."  (R&R (Dkt. No. 169) at 2)[2]  On January 15, 2021, Plaintiff filed objections to the R&R.  (Dkt. No. 172)

This Court will adopt the R&R as set forth below.

## BACKGROUND

### I.   FACTS[3]

Plaintiff is the trustee of the Millennium Lender Claim Trust. (PAC (Dkt. No. 134-1) ¶¶ 23, 39; id. at 1)  Millennium was headquartered in San Diego and provided laboratory-based diagnostic testing of urine samples for physicians.  (Id. ¶ 45)

Defendants are national banking associations, a bank chartered under the Bank Act of Canada, a bank chartered under Georgia law, and registered broker-dealers and investment advisors.  (Id. ¶¶ 24-32)

In April 2011, "a competitor [of Millennium], Ameritox, filed a civil action against Millennium in a federal court in Florida (the 'Ameritox Litigation')," alleging violations

---

[2]  All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

[3]  The Court's factual statement is drawn from the PAC.  The well-pleaded facts alleged in the PAC are presumed true for purposes of resolving Plaintiff's motion for leave to file an amended complaint.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

of the Anti-Kickback statute and the Stark Law.  (Id. ¶ 61)  In March 2012, the U.S. Department of Justice ("DOJ") began investigating Millennium for federal healthcare law violations.  (Id. at ¶¶ 1-2, 73-74)  That same month, Chase, JPM Securities, SunTrust, SunTrust Robinson Humphrey, Bank of Montreal, and "a handful of others" entered into a credit agreement with Millennium in which they provided the company with a $310 million term loan facility and a $20 million revolving credit facility (the "2012 Credit Agreement").  (Id. ¶72)

Defendants monitored the DOJ's investigation of Millennium and began "exploring with the Insiders ways to sell [Millennium] to a third-party in a mergers and acquisitions transaction and/or to refinance the 2012 Credit [Agreement] with other lenders or through an initial public offering [('IPO')] of Millennium stock" so as to escape their "term loan exposure to Millennium."  (Id. ¶¶ 81, 90; see also id. ¶¶ 84-85; see also id. ¶ 2 (defining "Insiders" as Millennium's controlling equity, debenture and warrant owners – the founder, president, general counsel, and certain associates from a private equity firm))  In other words, Defendants were working with Millennium on an exit strategy.  (Id. ¶¶ 3-6)

"By the end of February 2014, however, the only financing option left on the table was a 'maximum leverage' institutional financing" – totaling $1.775 billion – that would "replace[] by allocations and assignments" the banks' loans with the new Investors' loans.  (Id. ¶ 86 (original alteration marks omitted))  This institutional financing would also provide Millennium's Insiders with dividends, options, and bonuses "just shy of $1.27 billion."  (Id. ¶ 90 (emphasis omitted); see also id. ¶¶ 6, 16; id. ¶ 17 ("Millennium itself received nothing of value in the 2014 Transaction."))

In a March 16, 2014 commitment letter (the "2014 Commitment Letter"), JP Morgan, CitiGlobal, SunTrust, and BMO agreed that they would fund the $1.775 billion

financing through a term loan as "Initial Lenders," and "all four of the Defendant broker-dealers were named as 'Arrangers' of the syndication effort."  "JPM Securities and CitiGlobal were made 'Lead Arrangers' and 'Joint Bookrunners.'"  (Id. ¶¶ 86, 88)

The syndicated loan transaction was effectuated on April 16, 2014 (the "2014 Credit Agreement") after Chase made the initial term loan of $1.775 billion to Millennium, which triggered the commitments of the Investors to purchase the entire amount from Chase through the assigned allocations.  (Id. ¶ 15)

On June 16, 2014, a jury in the Ameritox case returned a verdict in favor of Ameritox, finding that Millennium had violated both the Anti-Kickback statute and the Stark Law.  (Id. ¶ 145)  The jury awarded Ameritox $2.755 million in compensatory damages and $12 million in punitive damages – later remitted to $8.5 million – based on Millennium's misconduct in Florida, Tennessee, and Texas.  (Id. ¶ 146)  On the day of the jury's verdict, Chase and JPM Securities concluded that the verdict would have a $500 million negative impact on Millennium's valuation.  (Id. ¶ 149)

In December 2014, the DOJ notified Millennium that it intended to intervene in the False Claims Act proceedings brought by qui tam relators based on Millennium's alleged federal healthcare law violations.  (Id. ¶ 153)  And, in February 2015, a Medicare Administrative Contractor for Centers for Medicare and Medicaid Services "notified Millennium that the Company's Medicare billing privileges would be revoked on account of alleged administrative billing abuses relating to claims submitted by Millennium for services provided, after their dates of death, to 59 Medicare beneficiaries."  (Id. ¶ 155; see id. ("As Medicare reimbursement was Millennium's single largest source of revenue by a considerable margin, termination of those billing privileges would likely be fatal to the Company."))

5

In May 2015, Millennium disclosed that it had agreed in principle to a $256 million global settlement with the DOJ.  (Id. ¶ 158)  Millennium finalized that settlement on October 16, 2015, and on November 10, 2015, Millennium filed a bankruptcy petition.  (Id. ¶ 160)  The Bankruptcy Court issued a bankruptcy plan that established the Trust, and Plaintiff was appointed as Trustee.  (Id. ¶ 23)

## II.   THE COMPLAINT

The Complaint alleges eleven causes of action:  Causes of Action One through Six arise under the securities laws of California, Massachusetts, Colorado, and Illinois, and allege that Defendants made actionable misstatements and omissions to the Investors.  (Cmplt. (Dkt. No. 1-1) ¶¶ 125-172)  The Seventh Cause of Action alleges negligent misrepresentation as to all Defendants.  (Id. ¶¶ 173-181)  Causes of Action Eight through Eleven name only Chase, and allege breach of fiduciary duty, breach of contract, breach of post-closing contractual duties, and breach of the implied covenant of good faith and fair dealing.  (Id. ¶¶ 182-207)  Accordingly, the Complaint alleges that all Defendants committed negligent misrepresentation and securities law violations (id. ¶¶ 53-65), and that JPM Securities and CitiGlobal created offering materials that contained material misstatements and omissions that were designed to, and did, induce the Investors' purchases of the Millennium notes. (Id. ¶¶ 70-91)

## III.   THE MAY 22, 2020 OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

Set forth below is a summary of the Court's May 22, 2020 Opinion granting Defendants' motion to dismiss.  See Kirschner, 2020 WL 2614765.

### A.   State Securities Law Claims

Defendants moved to dismiss the Complaint's state securities laws claims "on the ground that 'a syndicated bank loan is not a "security" and a loan syndication is not a "securities

distribution.""" Id. at *6 (citation omitted).  "In determining whether debt obligations such as the Millennium notes are 'securities,' courts apply the 'family resemblance' test set forth in Reves v. Ernst & Young[,] 494 U.S. 56 (1990)[,] [a four-part test.]" Id. at *6-7.  Finding that the second, third, and fourth Reves factors weigh in favor of finding that the Notes are not securities, the Court concluded that Plaintiff's state securities laws claims – Causes of Action One through Six – failed.  Id. at *8-10.

     **B.**    **Negligent Misrepresentation Claim**

       Defendants moved to dismiss Plaintiff's negligent misrepresentation claim.  The Court concluded that New York law applies.  Id. at *11-12.  Under New York law, "a party bringing a negligent misrepresentation claim must plead facts demonstrating that '(1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information; (2) the defendant negligently provided incorrect information; and (3) the plaintiff reasonably relied upon the information given.'" Id. at *12 (quoting LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014)).

       Plaintiff claimed that a "special relationship" existed between the Investors and Defendants because "'Defendants were uniquely situated and possessed special knowledge about Millennium.'" Id. (citation omitted).  For example, Plaintiff claimed that "'Defendants had knowledge superior to that of the Investors of the facts surrounding the DOJ Investigation because of the[ir] unique access,' including to Millennium's general counsel." Id. (citation omitted).  The Court concluded, however, that "the Complaint [did] not contain factual allegations demonstrating that Defendants used this 'unique access' to induce purchase of the Notes." Id.  "For example, Plaintiff assert[ed] that Chase 'controlled every aspect of the rating process for Millennium, down to writing the Rating Agency Presentation . . . and scripting oral

responses to [rating agency] questions.'" Id. (citation omitted).  But this alleged conduct "was directed at a third party and not [at the Investors]." Id.  And Plaintiff's allegations concerning statements by Millennium's outside counsel on an investor call suggesting that the DOJ investigation would not have a material effect on Millennium's finances were likewise insufficient, because "Plaintiff ha[d] not alleged that Defendants had any control over [Millennium's lawyer, or what the lawyer] said during this investor call." Id.  The Court also noted that "potential investors participating in the call were presumably free to ask [Millennium's lawyer] any question they wished regarding Millennium's potential exposure." Id.  The Court thus distinguished Plaintiff's claims from those made in Kimmell v. Schaefer, 89 N.Y.2d 257 (1996), "where the defendant was responsible for generating the data designed to promote the investment, and presented that data to potential investors." Id.

The Court further found that, "[a]ssuming arguendo that the agreements [between Defendants and] investors demonstrate privity, Plaintiff [could not] overcome disclaimers in the[] agreements [which are] fatal to [the] negligent misrepresentation claim." Id. at *13.  The Court found that the case was "analogous to UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.N.Y. 2003)," where "the court dismissed a negligent misrepresentation claim because 'even if the bank Defendants had the knowledge the Complaint attributes to them, the banks had no duty to disclose it to Plaintiffs,'" given disclaimers in the applicable agreements. Id. (quoting UniCredito, 288 F. Supp. 2d at 499).  The Court also emphasized that Plaintiff "ha[d] not pled factual allegations demonstrating that Defendants prevented Millennium from making necessary disclosures to the investors." Id.  Unlike in Financial Guaranty Insurance Co. v. Putnam Advisory Co., 783 F.3d 395, (2d Cir. 2015), here the disclaimers tracked the alleged misrepresentations, such that no special relationship existed between the investors and

Defendants.  Id. at *13-14.  Accordingly, the Court granted Defendants' motion to dismiss Plaintiff's negligent misrepresentation claim.  Id. at *14.

### C.   <u>Breach of Fiduciary Duty Claim</u>

Chase argued that "Plaintiff's breach of fiduciary duty claim [should be dismissed, because] it had no such duties under the Credit Agreement."  Id.  "'In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.'"  Id. (quoting Kurtzman v. Bergstol, 40 A.D.3d 588, 590 (2d Dept. 2007)).  "'A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'"  Id. (quoting Kidz Cloz, Inc., No. 00 CIV. 6270 (DC), 2002 WL 392291, at *4 (S.D.N.Y. Mar. 13, 2002)).  The Court found that a disclaimer in the Credit Agreement made clear that Chase "would have only limited and non-fiduciary duties," such that dismissal of Plaintiff's breach of fiduciary duty claim was warranted.  Id. at *15.

### D.   <u>Breach of Contract Claims</u>

The Complaint pleads two breach of contract claims against Chase.  The first breach claim is premised on Chase's alleged failure to satisfy conditions precedent to the closing, and the second breach claim alleges that Chase failed to provide notice of Millennium's default.  Id.

As to the first claim, the Court found that the Credit Agreement provisions on which Plaintiff's breach claim was premised – regarding conditions precedent to closing – did not support such a claim.  Id.  "None of the[] provisions suggest[ed] that Chase ha[d] a duty to enforce compliance with, or investigate, Millennium's representations and warranties.  And

Section 9.3 of the Credit Agreement absolves Chase from liability 'for any recitals, statements, representations or warranties made by any Loan Party' and from 'any obligation . . . to ascertain or to inquire as to the observance or performance of any of the . . . conditions.'" Id. (citation omitted). In response to Plaintiff's argument that Chase knew that Millennium's representations were false, and that the conditions precedent had not been satisfied, the Court explained that: "Chase's alleged actual knowledge is [] irrelevant to Plaintiff's breach of contract claim." Id.; see also id. ("Plaintiff does not cite any contractual provision in which Chase takes on an obligation to do anything with respect to Millennium's representations and warranties, or the conditions precedent, except for administrative actions that are not relevant here."). Accordingly, the Court granted Defendants' motion to dismiss Plaintiff's first breach of contract claim. Id. at *16.

In his second breach of contract claim, Plaintiff claims that Chase "actually knew" of Millennium's default and failed to provide notice. Id. (citation, quotation marks, and emphasis omitted). The 2014 Credit Agreement provides, however, that Chase's duty to provide notice of a default is triggered only upon receipt of a formal notice of default as set forth in Section 9.5 of the agreement. Id. Because the Complaint does not allege that Chase had received the required notice of default, this Court dismissed Plaintiff's second breach of contract claim.

### E.   Breach of the Covenant of Good Faith and Fair Dealing

Chase argued that Plaintiff's good faith and fair dealing claim "'is barred by the express terms of the Credit Agreement.'" Id. (citation omitted). Although the Complaint does not cite to the New York Uniform Commercial Code ("N.Y. U.C.C."), in connection with his good faith and fair dealing claim, Plaintiff alleged that Chase's duties are governed by the N.Y.

U.C.C., and that Chase knew or recklessly disregarded misstatements by Millennium in connection with the 2014 Credit Agreement and frustrated the ability of Investors by withholding knowledge of facts and events.  Id.  Plaintiff's good faith and fair dealing claim does not "refer[] back to a contractual provision that Chase allegedly breached, however, . . . [and] to the extent that Plaintiff's good faith and fair dealing claim rests on the conditions precedent and notice provisions that form the basis for Plaintiff's breach of contract claims, its good faith and fair dealing claim must be dismissed as duplicative of its breach of contract claims."  Id. at *16-17.  Accordingly, the Court granted Defendant's motion to dismiss Plaintiff's good faith and fair dealing claim.

## IV.     THE PROPOSED AMENDED COMPLAINT

Although the Court granted Defendants' motion to dismiss the Complaint, it gave Plaintiff leave to amend.  Id. at *17.  On July 31, 2020, Plaintiff filed the PAC.  (PAC (Dkt. No. 134-1))  The PAC asserts five causes of action: (1) "Fraud in Controlling and in Making, Authorizing and Causing the Company's False Statements and Omissions to Investors," against JP Morgan and Citi; (2) "Fraud in Direct Communications with Investors and Lead Arrangers and Joint Bookrunners," against JP Morgan and Citi; (3) "Aiding and Abetting the Insiders' Fraud," against all Defendants; (4) "Conspiracy to Defraud Investors," against all Defendants; and (5) "Negligent Misrepresentation," against all Defendants.  (Id. ¶¶ 161-209)

The PAC thus alleges "'two [core] frauds'":

(i) a health care fraud built on years of pervasive business practices that illegally encouraged and/or coerced referring physicians and recovery clinics to order medically unnecessary tests, and (ii) a $1.775 billion investment fraud on the Investors by the Insiders and Defendants that falsely and deliberately attributed Millennium's financial success to its superior technology and lawful business practices while hiding the true and known facts about governmental investigation and private litigation surrounding those practices and the associated inflated billings.

(Id. ¶ 44 (emphasis omitted); see also ¶¶ 49-71 (allegations regarding Millennium's fraudulent business practices))

According to the PAC, in the 2012 Credit Agreement several defendants "committed to provide . . . loans to . . . Millennium."  (Id. ¶ 1)  By "January 2014," however, these defendants "had a serious problem," because Millennium was being investigated for health care fraud.  (Id.)  Company insiders at Millennium "were anxious to monetize their investments in [the company]" (id. ¶ 2) and "engaged affiliates of Defendant Bank of Montreal and, later, those of Defendant Citibank to work with them on the 'exit' strategy" (id. ¶ 3) – i.e., a sale of Millennium to third parties.  (Id. ¶ 2)

In preparation for this sale, certain Defendants – those "in the 2012 loan and those working on a sale to a third-party" – "conducted detailed examinations of the Millennium business practices," learning of conduct that had triggered, for example, the DOJ investigation. (Id. ¶ 3; see also generally id.  ¶¶ 72-80 (discussing Defendants' alleged knowledge of Millennium's fraudulent business practices and the DOJ's investigation of Millennium))  Efforts to sell the company failed, however, and because these Defendants had doubts about the "legitimacy of Millennium's revenues and profit margins," these Defendants "advised . . . against a securities offering to the public ('IPO') as a way out of the loans[,] . . . fearing that federal and state securities laws would mandate detailed disclosure of the DOJ Investigation, the numerous related litigations and the challenged business practices."  (Id. ¶ 4)

Accordingly, these Defendants and Millennium turned to a loan syndication, a transaction that "would be subject to less rigid disclosure requirements than an IPO and would not allow the investors the time or access for the due diligence performed by a traditional bank or third-party acquirer."  (Id. ¶ 5; see also id. ¶¶ 81-90 (describing Defendants' plans to "pump and

dump – leveraged loans to Investors, dividends to Insiders, pay-off and fees to Defendants"))
Defendants conducted due diligence of Millennium.  (Id. ¶¶ 91-96, 100-03; see also id. ¶ 82
("Because of their unique and superior access to non-public information about Millennium in
their role as existing lenders and/or financial advisors, Defendants were aware of details of the
underlying fraud and its impact on Millennium's business, and they later deliberately
misrepresented that information in the false narrative they created for the Investors in the 2014
Transaction."))  "Insiders insisted that the Defendants underwrite the $1.775 billion term loan on
a 'firm-commitment' basis, meaning that Defendants themselves would have to finance any or
all of the amount that they were not able to syndicate to unwitting investors."  (Id. ¶ 7)

Thus, Defendants "not only had motive to mislead investors [i.e., to facilitate the
'exit'], they had the opportunity to direct the fraud.  As a condition of their agreement to make
the initial loan to Millennium . . . [Defendants] demanded and obtained control over
[Millennium's] own disclosures . . . to the investors regarding [Millennium's] business practices
at issue in the DOJ investigation and related qui tams, employee retaliation and competitor
litigation."  (Id. ¶ 8; see also id. ¶¶ 97-98, 104, 128-33 (discussing certain Defendant's motive to
deceive and ensure the syndication was successful, as well as alleged deception); id. ¶¶ 105-09
(alleging the procurement of inflated ratings so as to mislead Investors, an effort led by JP
Morgan); id. ¶¶ 110-18 (alleging fraud in the formal offering materials given to Investors); id. ¶¶
119-27 (alleging that Defendants made false and misleading representations when responding to
Investors' questions about legal risks); ¶ 87 ("Defendants imposed as a condition on their
obligation to make the Initial Loan and syndicate the Notes to Investors on a firm commitment
basis that Millennium itself commit to a deliberate falsehood: '[no] possibility of disclosure of
material litigations, requiring instead a clean representation [to Investors] that [Millennium is]

not subject to any material litigation at all.'  The Banks and the Insiders knew . . . that the truth 'could prevent [their] utilization of the term loans and revolving loans.'" (no citation provided) (emphasis omitted); id. ¶ 134 (citing representations in the 2014 Credit Agreement "that were materially and deliberately false"))

According to Plaintiff, "Defendants . . . stood in a special relationship with investors by virtue of their superior knowledge of Millennium's legal-regulatory risks and exposure and thus owed the investors a non-disclaimable duty of care not to make negligent misrepresentations to induce investors' purchases."  (Id. ¶ 9)  Indeed, Defendants had "unique access" to Millennium's business practices, access the investors did not have, and thus investors had to "rely on Defendants for legal due diligence of Millennium."  (Id. ¶¶ 10-11)  "Defendants nevertheless sought to disclaim investors' reliance on them through boilerplate statements."  (Id. ¶ 11; see also id. ¶¶ 113, 118, 131, 135-37 (discussing disclaimers))

Investors discovered Defendants' misconduct upon learning of the settlement agreement between Millennium and the DOJ.  (Id. ¶ 19; see also id. ¶¶ 143-160 (alleging that, inter alia, Millennium did not inform the Investors of the Ameritox verdict and the DOJ's decision to intervene in the qui tam suits))

Examples of "Defendants' acts of primary fraud, aiding and abetting fraud, conspiracy to defraud, and negligent misrepresentation" include:

> Defendants prohibiting Millennium from disclosing "material litigation against Millennium" and "requir[ing]" Millennium to "falsely make a clean representation that it is not subject to any material litigation at all" (id. ¶ 12(a) (quotation marks, alteration marks, and emphasis omitted));

> "Defendants script[ing] for Millennium management deliberately false and misleading answers" about government investigations or litigation, such as "'non-event; have not heard from them [DOJ] in some time,'" all while "Defendants knew that such statements were false" (id. ¶ 12(c) (emphasis omitted));

Defendants fielding Investor inquires and also "g[iving] the same deliberately false and misleading answers" regarding investigations and litigations (id. ¶ 12(d));

"Defendants and the Insiders similarly conspir[ing] to misrepresent to Investors who asked about the Company's exposure in the DOJ Investigation that it was merely $20 million and thus immaterial.  That rosy projection was misleading, and Defendants knew it." (id. ¶ 12(e));

"Defendants also engaged in fraud by conspiring with the Millennium Insiders to obtain artificially-inflated ratings for the $1.775 billion term loan" (id. ¶ 13); and

"Defendants falsely represented to the Investors by words and conduct that Millennium was in compliance with the representations and warranties in the draft" 2014 Credit Agreement.  (Id. ¶ 15).

## V.    THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In her December 1, 2020 R&R, Judge Cave recommends that Plaintiff's motion to amend be denied on grounds of futility.  (R&R (Dkt. No. 169) at 2)  The R&R groups Plaintiff's claims as follows:  (1) the primary fraud claims (Causes of Action One and Two); (2) secondary fraud claims (Causes of Action Three and Four); and (3) the negligent misrepresentation claim (Cause of Action Five).  (Id. at 8; see also generally id. at 14-37)

### A.    Primary Fraud Claims

As discussed above, the PAC sets forth two primary fraud claims against JP Morgan and Citi:  (1) that Millennium made actionable misstatements and omissions to Investors as part of a scheme by the Insiders and Defendants, and that "JP Morgan and Citi not only knew of but also directed, controlled, caused and/or authorized the statements and omissions," for example, by prohibiting Millennium from disclosing the risks of the ongoing litigations and controlling the ratings (PAC (Dkt. No. 134-1) ¶ 164 (emphasis omitted); id. ¶¶ 161-69); and (2) that JP Morgan and Citi themselves made fraudulent statements to Investors about Millennium, for example, by placing their logos on the Confidential Information Memorandum ("CIM") and

becoming joint makers of the false and misleading statements and omissions contained therein.[4]
(Id. ¶¶ 170-77; see also generally R&R (Dkt. No. 169) at 9)

Judge Cave analyzes four aspects of the primary fraud claims:  (1) whether
Defendants controlled Millennium's statements (Cause of Action One); (2) the statements made
by JP Morgan and Citi (Cause of Action Two); (3) JP Morgan and Citi's scienter (an element of
fraud applicable to both claims); and (4) the disclaimers (applicable to both of the primary fraud
claims).  (R&R (Dkt. No. 169) at 14-30)

## 1.   Whether Defendants Controlled Millennium's Statements

The PAC alleges that "JP Morgan and Citi exercised such a degree of control over
[Millennium's] misstatements and omissions . . . that they are legally responsible as if they were
their makers."  (PAC (Dkt. No. 134-1) ¶ 164)  In the alternative, the PAC alleges that "JP
Morgan and Citi are primarily liable for fraud because they authorized or caused Millennium to
make the misstatements and omissions to Investors."  (Id.)  According to Plaintiff, the motive for
Defendants' misconduct was "their own unwanted credit exposure to Millennium."  (Id. ¶ 165)

The PAC claims that JP Morgan and Citi "imposed" on Millennium "as a
condition of their firm commitment underwriting" that Millennium not disclose to Investors
"'material litigation against Millennium.'"  (Id. ¶ 12 (emphasis omitted); see also id. ¶¶ 87, 102-

---

[4]  The PAC alleges that the

> JP Morgan and Citi Defendants materially misled Investors directly (and through
> the rating agencies) about (i) the Company's systemic non-compliance with health
> care and whistleblower non-retaliations laws, (ii) its solvency and fraudulently-
> inflated financial results and projections, (iii) the fair presentation of its financial
> condition in its audited financial statements (including failure to account for or
> disclose any material contingent liabilities), (iv) its fraudulently-inflated credit
> ratings, and (v) its material litigations and the DOJ Investigation.

(PAC (Dkt. No. 134-1) ¶ 173)

04, 164)  JP Morgan "led the effort to deliberately mislead Investors through the procurement of inflated ratings with a fictitious rating agency presentation."  (Id. ¶ 106; see also id. ¶ 13 (regarding obtaining "artificially-inflated ratings"); see also id. ¶ 109 ("JP Morgan controlled every aspect of the rating process for Millennium, down to writing the Ratings Presentation and scripting oral responses to questions that the Insiders and other Millennium management representatives were likely to be asked by rating agency personnel"))  "JP Morgan and Citi [also] scrubbed the CIM and Investor Presentation of any reference to the material regulatory and litigation risks that threatened Millennium's very existence, [and] they directed the Company to misrepresent and omit material facts concerning the underlying business practices that created those risks and loss contingencies."  (Id. ¶ 114)

Plaintiff contends that Millennium and the Insiders made fraudulent statements to Investors (Pltf. Br. (Dkt. No. 133) at 15-16 (citing PAC (Dkt. No. 134-1) ¶¶ 2, 12-15, 18-19, 65, 72-129, 134-38, 143-60, 163, 166-68, 175-76)), and that JP Morgan and Chase are liable for these fraudulent statements, because they caused and authorized the fraud.  (Id. at 16-17 (citing PAC (Dkt. No. 134-1) ¶¶ 11-12, 87, 102-04, 164))  As set forth above, Plaintiff claims that JP Morgan "controlled and scripted misleading presentations to the ratings agencies and answers for Millennium management."  (Id. at 17 (citing PAC (Dkt. No. 134-1) ¶¶ 12, 105-09, 119-24, 164); see also id. at 18 (citing PAC (Dkt. No. 134-1) ¶¶ 12, 87, 96-99, 102-04, 119-27))  And as is discussed below, Plaintiff argues that the disclaimers do not insulate Defendants from liability. (Id. at 27-31)

In response, JP Morgan and Citi contend that the disclaimers bar all of Plaintiff's claims.  (Def. Br. (Dkt. No. 136) at 17)  In the alternative, these Defendants argue that the PAC does not plead facts demonstrating that "JP Morgan and Citi were in a position to control

17

Millennium's statements" (id. at 22), or that "JPMorgan and Citi did in fact authorize or otherwise cause Millennium's statements." (Id. at 24) These Defendants note that "the PAC identifies just one allegedly inaccurate statement actually made by" JP Morgan, and they argue that "Plaintiff's allegations of direct misrepresentations" made by JP Morgan and Citi are insufficient to plead fraud. (Id. at 25-26) These Defendants further contend that the PAC does not sufficiently plead reasonable reliance or scienter. (Id. at 29-31)

Judge Cave concludes that the PAC does not plead facts sufficient to demonstrate that JP Morgan and Citi authorized or caused Millennium's alleged misrepresentations. (R&R (Dkt. No. 169) at 17 (citing Woori Bank v. RBS Secs., Inc., 910 F. Supp. 2d 697, 702 (S.D.N.Y. 2012)); see id. ("[T]he Court finds that Plaintiff has not adequately alleged that JP Morgan and Citi were in a position to control, and did control, Millennium's false statements.")) Noting that Plaintiff relies substantially on an email that he asserts demonstrates that JP Morgan and Citi prohibited Millennium from disclosing information to Investors about material litigations, Judge Cave finds that the email "does not support Plaintiff's allegation." (Id. at 18 (citing PAC (Dkt. No. 134-1) ¶¶ 12, 164)) The email "concerns Millennium's representations and warranties in the Fee Letter and Commitment Letter to Defendants – [and not communications with] Investors." Judge Cave further concludes that "Plaintiff's alteration of the document is materially misleading." (Id. (citing Viapiano Decl., Ex. D (Dkt. No. 137-4) at 7) (emphasis omitted)) Plaintiff's remaining allegations in support of his theory of JP Morgan and Citi control over Millennium are conclusory.[5]

---

[5] Judge Cave also finds that "the presence of JP Morgan and Citi's corporate logos on the CIM [– which the PAC alleges contains misrepresentations –] does not render them 'joint makers' of the statements therein." (R&R (Dkt. No. 169) at 18 (citing PAC (Dkt. No. 134-1) ¶ 172); see also id. (distinguishing In re Virtus Investment Partners Securities Lit., 195 F. Supp. 3d 528 (S.D.N.Y. 2016))) Judge Cave notes that the cases Plaintiff relies on to "support his control theory of primary fraud liability" are not persuasive here, because in those cases the defendant had complete control over the misstatements by virtue of (1) being in the same corporate family

(Id.)  Accordingly, Judge Cave concludes that the PAC fails to plausibly allege that JP Morgan and Citi authorized, caused, or controlled Millennium's statements, such that leave to amend should be denied as to Plaintiff's First Cause of Action.  (Id. at 20)

### 2.    Statements by JP Morgan and Citi

In Support of the PAC's Second Cause of Action – which alleges that JP Morgan and Citi themselves made fraudulent statements to Investors (PAC (Dkt. No. 134-1) ¶¶ 170-177) – Plaintiff asserts, for example, that "JP Morgan's and Citi's logos are on every page of the misleading CIM," and that they "gave the same fraudulent answers to Investor questions about material litigation and the DOJ investigation that they had scripted for Millennium management."  (Pltf. Br. (Dkt. No. 133) at 18; see id. at 19 (citing PAC (Dkt. No. 134-1) ¶¶ 110-27); see also PAC (Dkt. No. 134-1) ¶¶ 12, 93-99, 123, 131-32, 154, 158, 172-73))  They also "misled any Investor who asked about Millennium's potential exposure to damages, fines and penalties in the DOJ Investigation by citing [Millennium's lawyer's] . . . figure."  (Id. at 19) "When JPMorgan informed the Investors through words, actions, or silence that the funding of the Term Loan had occurred with 'no material change' . . . JPMorgan committed fraud through an actionable 'half-truth.'"  (Id. 19-20)

As to the Second Cause of Action, Judge Cave focuses on four examples of JP Morgan's and Citi's alleged fraud pled in the PAC:  (1) that JP Morgan and Citi repeated a

---

or (2) having prepared the documents containing the misstatements.  (Id. at 18-19; see id. at 19 ("In contrast, Plaintiff alleges that JP Morgan and Citi 'helped Millennium' draft statements to investors, such as PowerPoint slides or Q&A responses, and shared information about how to dial into the presentation.  The PAC makes clear[, however,] that the underlying fraudulent statements were made by Millennium and the Insiders, not [by] JP Morgan and Citi." (citing PAC (Dkt. No.134-1) ¶¶ 12-15, 65, 98-123, 125-27, 129, 136))  Finally, a document Plaintiff relies on in support of his claim that Millennium lied to investors during a presentation contradicts Plaintiff's allegation.  (Id. at 19 (citing PAC (Dkt. No. 134-1) ¶ 121; Viapiano Decl., Ex., E (Dkt. No. 137-5) at 2))

statement made by Millennium's lawyer regarding the potential cost of a settlement with the DOJ; (2) the use of the companies' logos in the CIM; (3) "words and conduct" that constitute misrepresentations; and (4) JP Morgan's response to an Investor's question about Millennium's litigation history.  (R&R (Dkt. No. 169) at 20 (citations omitted))  Judge Cave finds that none of the matters cited by Plaintiff are actionable, because (1) they do not constitute actual misrepresentations or half-truths that materially mislead; and (2) "'[n]ondisclosure is not actionable under the common law of fraud and deceit unless there is a duty to speak,'" and JP Morgan and Citi had no such duty here.  (Id. at 21 (quoting Frigitemp Corp. v. Fin. Dynamics Fund, Inc., No. 74 Civ. 1335, 1974 WL 466, at *5 (S.D.N.Y. Dec. 6, 1974); see also id. 20-22 (citing cases))

As to "Plaintiff's allegation that JP Morgan and Citi should have but did not disclose the methodology by which damages might be assessed in the DOJ Investigation," Judge Cave "finds that Plaintiff has failed to allege that [JP Morgan and Citi] omitted any material qualifying information that would render this statement a 'half-truth.'"  (Id. at 21 (citation omitted))  In short, JP Morgan and Citi did not have a duty to disclose information to Plaintiff, and what they did disclose was not misleading.  (Id. at 21-22; see also id. at 24 (concluding that information JP Morgan communicated to an investor regarding Millennium's litigation exposure was not a half-truth))  As to Plaintiff's arguments regarding the presence of the companies' logos on the CIM, Judge Cave concludes that the presence of the logos on the CIM does not "render" JP Morgan and Citi "'joint makers' of the statements."  (Id. at 18, 23)  As to Plaintiff's claim that "Defendants by words and conduct . . . mispresented to the Investors that conditions precedent for funding the 2014 Credit Agreement had been satisfied" (PAC (Dkt. No. 134-1) ¶ 132), Judge Cave finds that Plaintiff's allegations "fail[] to satisfy the particularity requirements of [Federal

Rule of Civil Procedure 9(b)]."  (R&R (Dkt. No. 169) at 23)

In sum, Judge Cave concludes that the PAC does not plead facts sufficient to demonstrate that JP Morgan and Citi made fraudulent material misrepresentations and omissions to investors, and that leave to amend should be denied as to the Second Cause of Action.  (Id. at 24)

### 3. Scienter

The PAC asserts that JP Morgan and Citi acted with intent to defraud, because they hoped to achieve a "clean exit" from the 2012 loan transaction with Millennium.  (PAC (Dkt. No. 134-1) ¶¶ 2, 83)  Judge Cave notes that "Plaintiff relies in large part on the motive-and-opportunity theory of scienter" (R&R (Dkt. No. 169) at 25), and she finds insufficient Plaintiff's factual allegations in support of this theory.  (Id. at 25-27)

Judge Cave goes on to explain that,

> [t]o the extent Plaintiff invokes the conscious misbehavior or recklessness theory of scienter by pointing to allegations that Defendants knew about the false misrepresentations in the Offering Materials and the 2014 Credit Agreement because of their role as Millennium's lenders, involvement in the unsuccessful sale to a third party, and "unique access" to Insiders and Millennium's outside counsel (ECF No. 143 at 14), he might fare better.

(Id. at 27)  This is so because the PAC pleads several allegations concerning statements by JP Morgan and Citi employees that cast doubt on the strength of Millennium's financial condition. (Id.)  These allegations "'go beyond generalized accusations of negligence' to satisfy Rule 9(b)." (Id. (citing PAC (Dkt. No. 134-1) ¶¶ 92, 109; In re Adelphia Comms. Corp. Secs & Deriv. Litig., No. 03 Md. 1529 (LMM), 2007 WL 2615928, at *4 (S.D.N.Y. Sept. 10, 2007)))  Judge Cave concludes, however, that even if Plaintiff has sufficiently pled scienter, the "primary fraud claim[s] [are] . . . deficient for [other] reasons."  (Id.)

4.     **The Disclaimers**

As discussed above, Defendants' primary argument as to all of Plaintiff's claims –
including the primary fraud claims – is that they are barred by the contractual disclaimers.  (Def.
Br. (Dkt. No. 136) at 17)  Because both fraud claims and negligent misrepresentation claims
require reasonable reliance, this Court ruled in the May 22, 2020 Opinion that the disclaimers in
the agreements are fatal to Plaintiff's claim that the Investors reasonably relied on Defendant's
statements, because the Investors "specifically agreed that they had, and would continue to, make
their own credit decisions and would not rely on the Defendants."  Kirschner, 2020 WL
2614765, at *13 (citation and quotation marks omitted).

Defendants also argue that any exceptions that would render the disclaimers
unenforceable are not present in this case.  (Def. Br. (Dkt. No. 136) at 18-22)  Defendants note
that this Court found that the Investors are "'highly sophisticated'" "'institutional buyers'" (id. at
19) (quoting Kirschner, 2020 WL 2614765, at *10)) who disclaimed reliance on Defendants'
statements.  (Id.)  To the extent that Plaintiff argues that the disclaimers are "lies" or are too
general, Defendants assert that this Court has already rejected that argument or that there is not
legal support for such a claim.  (Id. at 20 (citing Kirschner, 2020 WL 2614765, at *14))
Defendants further argue that this Court has likewise previously rejected Plaintiff's argument
that the disclaimers are void because Defendants had superior knowledge.  (Id. at 21 (citing
Kirschner, 2020 WL 2614765, at *12-13))  Finally, Defendants contend that Plaintiff's argument
that the "no duty" disclaimer in Section 9.6 cannot bar his claim for failure to track the alleged
misrepresentations – and does not preclude a finding of a special relationship – was also
considered and rejected by this Court.  (Id. at 22 (citing Kirschner, 2020 WL 2614765, at *13-
14))

Plaintiff argues that the disclaimers either do not apply or are unenforceable. (Pltf. Br. (Dkt. No. 133) at 26)  Plaintiff first argues that the reliance disclaimers – using Section 9.6 of the 2014 Credit Agreement as an example – do not bar his primary or secondary fraud claims, because these disclaimers do not apply to statements made by Millennium, which "were secretly controlled or caused by JP Morgan and Citi."  (Id.)  Plaintiff also argues that the reliance disclaimers are unenforceable as to statements by Defendants because (1) they are false on their face; (2) generalized; (3) Defendants had specific/peculiar knowledge negating the effect of the disclaimers; and (4) the "reasonableness of reliance in light of a disclaimer and the extent to which the peculiar knowledge exception might apply are issues that are not properly resolved at the motion to dismiss stage, and thus cannot render the PAC claims 'futile' at this even earlier stage."  (Id. at 31; see also id. at 27-31)  Finally, Plaintiff argues that the "'duty' disclaimer, in Section 9.6 of the Credit Agreement or otherwise" cannot bar his claims.  (Id. at 31)

In her analysis, Judge Cave reiterates that a primary fraud claim "must adequately allege reasonable reliance and, to the extent they are based on omissions, a duty to disclose." (R&R (Dkt. No. 169) at 27 (citation omitted))  Judge Cave finds that the primary fraud claims fail because of the disclaimers in the relevant agreements that preclude those essential elements of fraud.  (Id. at 28 (citation omitted))  Judge Cave also cites this Court's finding in the May 22, 2020 Opinion that the disclaimers are "'fatal to' Plaintiff's claim that the Investors reasonably relied on any alleged misstatements or omissions by the Defendants because the Investors 'specifically agreed that they had, and would continue to, make their own credit decisions and would not rely on the Defendant banks.'"  (Id. (quoting Kirschner, 2020 WL 2614765, at *13)) The 2014 Credit Agreement and the CIM thus contain "express non-reliance provisions."  (Id.)

"Plaintiff['s] argu[ment] that the disclaimers do not apply to statements or

omissions by Millennium that JP Morgan and Citi orchestrated" fails, because the PAC does not plead facts sufficient to demonstrate that JP Morgan and Citi controlled, assisted in making, or made the misleading statements at issue.  (Id. at 29)  And "Plaintiff's attempt to recharacterize the disclaimers as relating only to 'general risks or conditions, including "credit risk," which are present in every transaction'" (id. (quoting Pltf. Br. (Dkt. No. 133) at 28)) also fails, because this argument directly contradicts this Court's finding, in the May 22, 2020 Opinion, that "'the contractual disclaimers at issue address the evaluation of credit risk, which is exactly what the alleged misrepresentations relate to.'"  (Id. (quoting Kirschner, 2020 WL 2614765, at *14))  "Plaintiff's attempt to recycle the 'peculiar knowledge' exception" fails because this Court "already rejected" that argument.[6]  (Id. (citing Kirschner, 2020 WL 2614765, at *12-13))  Finally, Plaintiff's argument that the disclaimers do not preclude the existence of a special relationship was likewise previously rejected by this Court.  (Id. at 30 (citing Kirschner, 2020 WL 2614765, at *14))  "Having rejected Plaintiff's theory that JP Morgan and Citi controlled Millennium's statements, [Judge Cave] finds that this argument gives Plaintiff no traction in evading the preclusive effect of the disclaimers, which 'track the misrepresentations' that Plaintiff attempts to allege here."  (Id. (citation omitted))

Judge Cave concludes that "the disclaimers provide a separate and independent basis on which to [find] that Plaintiff's primary fraud claims in the PAC are futile."  (Id.)

**B.**     **<u>Secondary Fraud Claims</u>**

In the PAC's Third and Fourth Causes of Action, Plaintiff pleads secondary fraud

---

[6] "And, even assuming that JP Morgan and Citi had greater access to Millennium's outside counsel – an allegation that appears in both the 2017 Complaint and the PAC (compare ECF No. 1-1 ¶¶ 56-63, 84-85, 87 with ECF No. 134-1 ¶¶ 94-97, 100-03, 125-26) – that allegation does not lead to an inference that the Investors could not themselves access information from Millennium or its counsel."  (Id. at 30 (citation omitted))

claims against all Defendants.  Plaintiff alleges that (1) Millennium made misstatements and omissions to Investors, that Defendants knew of the Insiders' scheme to defraud, and that Defendants aided and abetted the Insiders' fraudulent scheme (PAC (Dkt. No. 134-1) ¶¶ 178-185[7]; and (2) Defendants conspired to act in concert with the Insiders in connection with their scheme to defraud.[8]  (Id. ¶¶ 186-193; see also generally R&R (Dkt. No. 169) at 10)

In addition to arguing that the disclaimers bar Plaintiff's secondary fraud claims, Defendants contend that the PAC insufficiently pleads either an aiding and abetting claim or a

---

[7]  The PAC alleges that

> [a]ll Defendants substantially assisted the Insiders in the latter's scheme to defraud the Investors by (a) committing to act as Initial Lenders to Millennium of the $1.775 billion Term Loan B facility through which the Insiders' fraud was consummated; (b) underwriting and syndicating the Notes to Investors as part of that term loan transaction; (c) counseling the Insiders on false written and oral communications with rating agencies and with Investors concerning the Company's business practices and the legal challenges thereto; and (d) themselves falsely communicating directly or through their counsel with the rating agencies and Investors on those same subjects throughout the course of the 2014 Transaction."

(PAC (Dkt. No. 134-1) ¶ 182)

[8]  The PAC alleges that

> Defendants agreed and conspired to act in concert with the Insiders and with one another with the understanding to advance the scheme to defraud, and actively and intentionally participated with the Insiders and with one another in furtherance of the scheme to defraud by (i) consciously avoiding or concealing information revealed during due diligence that the Company was required to disclose; (ii) directing the false and misleading content of the Insiders' presentations to rating agencies and in the Offering Materials to the Investors themselves; (iii) acting as Initial Lenders to Millennium; (iv) arranging for the distribution of Millennium's Notes to the Investors and (v) engaging in a post-closing cover-up of the fraud in the 2014 Transaction. All Defendants engaged in one or more of these overt acts in furtherance of the conspiracy.

(Id. ¶ 190)

conspiracy claim against Defendants, as it fails to "adequately allege[] under Rule 9(b) that any Defendant had actual knowledge of any purported fraud perpetrated by Millennium." (Def. Br. (Dkt. No. 136) at 32) Defendants further contend that – absent a duty to disclose – a failure to disclose material information does not support an aiding and abetting fraud claim and does not constitute an overt act for purposes of a conspiracy claim. (Id.) Defendants go on to argue that the PAC does not allege any "affirmative actionable misstatements by a Defendant – much less misstatements that could plausibly have 'proximately caused' the [Investors'] alleged injury as required for both secondary liability claims." (Id. (citations omitted)) Finally, Defendants contend that the allegations of conspiratorial agreement in the PAC are conclusory. (Id. at 33)

Plaintiff argues that "the PAC alleges all the elements of primary fraud by Millennium" (Pltf. Br. (Dkt. No. 133) at 21), and that JP Morgan's and Citi's "statements, omissions and conduct" supporting the primary liability claims "all equally support the knowledge, substantial assistance, agreement, overt act and intentional participation prongs of aiding and abetting and conspiracy to defraud liability." (Id. at 22) These "statements, omissions and conduct" are: "(i) authorizing or causing Millennium's disclosures and non-disclosures to Investors and to the rating agencies and (ii) making (and their counsel's making) false and misleading disclosures directly to Investors." (Id.)

Plaintiff asserts that the PAC alleges secondary fraud as to BMO and SunTrust as well, citing to portions of the PAC alleging that these defendants had "material non-public information" about Millennium's business practices. (Id. (citing PAC (Dkt. No. 134-1) ¶¶ 3-4, 12-13, 77, 81-87)) Plaintiff further asserts that the PAC shows that BMO and SunTrust agreed to participate in the alleged fraudulent scheme by committing a percentage of money to the term loan financing and by assisting and participating in the fraudulent scheme. (Id. at 23 (citing PAC

(Dkt. No. 134) ¶¶ 12, 29, 32, 81-113, 118-27))

As to Plaintiff's aiding and abetting claim, Judge Cave notes that other courts "have held that disclaimers similar to those in this case [] barred aiding and abetting [fraud] claims." (R&R (Dkt. No. 169) at 34; see also id. at 34-35 (citing cases)) Judge Cave concludes that "[i]n the absence of a duty to disclose, Plaintiff's aiding and abetting claim is unsustainable," and she recommends "that Plaintiff's aiding and abetting claim be dismissed as futile." (Id. at 35 (citing cases))

As to Plaintiff's conspiracy claim, Judge Cave focuses on whether the PAC adequately alleges an "overt act," which is a necessary element of a conspiracy claim. (Id. at 37 (citation and quotation marks omitted)) Judge Cave explains that

> the crux of Plaintiff's civil conspiracy claim is Defendants' failure to disclose to the Investors the risk that the DOJ Investigation and the Ameritox litigation would result in Millennium having to pay a settlement greater than $20 million, but such a failure to act or to disclose is insufficient to constitute an overt act for purposes of pleading a civil conspiracy claim.

(Id. (citing cases))

Concluding that the PAC does not adequately allege an overt act, Judge Cave "recommends that Plaintiff's civil conspiracy claim be dismissed as futile." (Id.)

### C.    Negligent Misrepresentation Claim

The Fifth Cause of Action alleges a negligent misrepresentation claim against all Defendants. (PAC (Dkt. No. 134-1) ¶¶ 194-209) The PAC asserts that the "Investors constituted a limited group of persons for whose benefit and guidance the Defendants supplied [materials]" (id. ¶ 195); that JP Morgan and Citi "caused and authorized Millennium's [misstatements and omissions]," and that "JP Morgan also controlled the Ratings Presentation[,] with the intent that the ratings" would influence the Investors. (Id. ¶ 196) "As senior lenders,

mergers and acquisition advisors and underwriters/arrangers for Millennium, the Defendants had knowledge superior to that of the Investors . . . of Millennium's business practices at issue in the DOJ Investigation and related <u>qui tams</u>, employee retaliation litigation and the Ameritox Litigation, as well as the legal and financial exposure of [Millennium] in such matters."  (<u>Id.</u> ¶ 197)  Accordingly, "Investors were totally reliant on Defendants" (<u>id.</u> ¶ 198), and "Defendants stood in a special relationship with the Investors that imposed upon Defendants a duty of care to render accurate information to the Investors in the 2014 Transaction."  (<u>Id.</u> ¶ 199)

Plaintiff further alleges that "the Investors were in contractual privity with those Defendants who acted as Arrangers of the Investors' commitments to purchase and who assigned to Investors their interests as Initial Lenders to Millennium in the 2014 Transaction."  (<u>Id.</u> ¶ 200)  "Defendants used their control over Millennium's disclosures and their superior knowledge . . . to induce the Investors' purchases of the Notes," namely pertaining to the "material litigations or investigations."  (<u>Id.</u> ¶ 202)  Defendants themselves also made false, incomplete, and inaccurate statements to Investors.  (<u>Id.</u> ¶ 203)

As to the disclaimers, Plaintiff alleges that "disclaimers of Investor reliance on Defendants . . . are not enforceable as to statements by Millennium that the Investors had no reason to know were caused or authorized by a Defendant."  (<u>Id.</u> ¶ 205)  And "Defendants' disclaimers as to 'creditworthiness' (or other similarly generic disclaimers about the 'status') of the borrower are not enforceable because they do not track with the requisite specificity the alleged negligent misrepresentations detailed" in the PAC.  (<u>Id.</u>; <u>see also generally</u> R&R (Dkt. No. 169) at 11)

Plaintiff maintains that the PAC sufficiently pleads all the elements of a negligent misrepresentation claim, including a special relationship of trust (Pltf. Br. (Dkt. No. 133) at 24-

25 (citing PAC (Dkt. No. 134-1) ¶¶ 12-16, 18, 91-127, 159, 194-203)), and argues that the PAC cures the defects cited in this Court's May 20, 2020 Opinion.  (Pltf. Reply Br. (Dkt. No. 143) at 7-8 (citing PAC (Dkt. No. 134-1) ¶¶ 8-10, 12-13, 82, 87, 94, 99, 105-09, 163, 173, 202))

Defendants respond that the disclaimers bar Plaintiff's negligent misrepresentation claim, and further contend that the PAC does not sufficiently plead the requisite relationship for a negligent misrepresentation claim.  (Def. Br. (Dkt. No. 136) at 33) Defendants also argue that Plaintiff's negligent misrepresentation claim fails under this Court's May 22, 2020 Opinion which, inter alia, distinguishes the instant case from Kimmell, upon which Plaintiff again relies.  (Id. (citing Kirschner, 2020 WL 2614765, at *12))

In finding that the PAC's negligent misrepresentation claim is deficient, Judge Cave reiterates that the PAC does not adequately allege that JP Morgan and Citi controlled, caused, or authorized Millennium's statements, and that – in any event – such a "theory does not open the door to a negligent misrepresentation claim."  (R&R (Dkt. No. 169) at 32)  Nor does the PAC plead facts demonstrating that Defendants were in a special relationship or in contractual privity with Plaintiff.  (Id. at 31-33)  Judge Cave notes that "'banking relationships are not viewed as a special relationship giving rise to a heightened duty of care,'" and that this "'principle applies to loan participation agreements, . . . in which there is deemed to be no fiduciary relationship unless expressly and unequivocally created by contract.'"  (Id. at 32 (quoting Banque Arabe et Intn'l D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 158 (2d Cir. 1995)))  Here, Plaintiff did not bargain for "'a special relationship[] giving rise to a heightened duty of care.'"  (Id. (citation omitted))  Judge Cave further concludes that the PAC does not plead new allegations showing "'actual privity of contract or a relationship so close as to approach that of privity.'"  (Id. at 33 (quoting Kirschner, 2020 WL 2614765, at *12))  And

"Plaintiff's allegations about Defendants' 'unique access' and 'control[]' of the rating process

are the same allegations" that this Court found insufficient in the May 22, 2020 Opinion.  (Id. at

33 (citing Kirschner, 2020 WL 2614765, at *12))

Judge Cave concludes "that Plaintiff has failed to remedy the defects in his

negligent misrepresentation claim, such that amending his pleading to add this claim would be

futile."  (Id.)

## D.     **Judge Cave's Remaining Findings**

Judge Cave also finds that the PAC does not (1) plead fraud with particularity as

to Defendants Citibank and CitiGlobal, because these defendants are grouped together and the

PAC does not allege specific misrepresentations by either; (2) adequately plead scienter as to

Citibank or CitiGlobal (id. at 38); and (3) allege that "BMO or SunTrust prepared any allegedly

fraudulent documents or [were] otherwise involved in Millennium's alleged misstatements or

omissions."  (Id. at 39-40)

                        *        *        *        *

The R&R states that "the deficiencies outlined above lead to the conclusion that

Plaintiff's amendments are futile," and that accordingly, leave to amend should be denied.  (Id. at

41)

## VI.    **PLAINTIFF'S OBJECTIONS TO THE R&R**

Plaintiff filed his objections to the R&R on January 15, 2021.  (Pltf. Obj. (Dkt.

No. 172))  Plaintiff stresses that "[t]he PAC pleads a scheme by Millennium and Defendants to

defraud Investors in the 2014 leveraged loan transaction[,] . . . not simply fraud in particular

misstatements or omissions in [the] Offering Materials."  (Id. at 7 (emphasis in original))

Plaintiff repeats his assertions that Defendants were responsible for directing, assisting, and

participating in Millennium's fraudulent misrepresentations and omissions to Investors.  (Id.)

Plaintiff further argues that Judge Cave (1) applies an incorrect standard of review; and (2)

misstates and misapplies New York law.  (Id. 7-8)  Plaintiff broadly "objects to all adverse

rulings in the R&R."  (Id. at 7)

## VII.    PROCEDURAL HISTORY

On August 1, 2017, the Complaint was filed in Supreme Court of the State of

New York, New York County.  (Cmplt. (Dkt. No. 1-1))  On August 21, 2017, Defendants

removed the case to this District, asserting jurisdiction under the Edge Act, 12 U.S.C § 611 et

seq.  (Notice of Removal (Dkt. No. 1))  On June 28, 2019, Defendants moved to dismiss for

failure to state a claim.  (Dkt. No. 76)  On May 22, 2020, this Court granted Defendants' motion

to dismiss, but gave Plaintiff leave to move to file an amended complaint.  (Dkt. No. 119)

On July 31, 2020, Plaintiff moved for leave to file an amended complaint.  (Dkt.

No. 132)  On August 12, 2020, this Court referred Plaintiff's motion to Judge Cave for an R&R.

(Dkt. No. 148)  On December 1, 2020, Judge Cave issued her R&R, recommending that

Plaintiff's motion to amend be denied as futile.  (Dkt. No. 169)  Plaintiff filed his objections to

the R&R on January 15, 2021 (Dkt. No. 172), and Defendants filed their response that same day.

(Dkt. No 173)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a timely objection has been made to a

magistrate judge's recommendation, the district court judge "shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  <u>Id.</u>  However, "[o]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke <u>de novo</u> review.'"  <u>Phillips v. Reed Grp., Ltd.</u>, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration marks omitted). "To the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, [courts] will review the [R&R] strictly for clear error." <u>IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); <u>see also</u> <u>Ortiz v. Barkley</u>, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . .  the same arguments set forth in the original petition." (citation and quotation marks omitted)).  For portions of the R&R to which no timely objection is made, a Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations.  <u>Wingate v. Bloomberg</u>, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note and citing <u>Nelson v. Smith</u>, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

  **B.**   <u>**Leave to Amend**</u>

    Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . .  when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion in determining whether to grant leave to amend."  <u>Gurary v. Winehouse</u>, 235 F.3d 792, 801 (2d Cir. 2000).  "Where the possibility exists that [a] defect can be cured, leave to amend . . .

should normally be granted" at least once.  Wright v. Ernst & Young LLP, No. 97 CIV. 2189
(SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998).
Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] pled," there is "a
strong preference for allowing [a] plaintiff[ ] to amend."  In re Bear Stearns Companies, Inc.
Sec., Derivative, & ERISA Litig., No. 08 MDL 1963, 2011 WL 4072027, at *2 (S.D.N.Y. Sept.
13, 2011).

        Leave to amend may properly be denied in cases of "'undue delay, bad faith, or
dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party by virtue of the allowance of the
amendment, futility of amendment, etc.'"  Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir.
2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of N.Y., No.
10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule
15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely
given,' leave to amend need not be granted where the proposed amendment is futile." (citations
omitted)).  Leave to amend may be denied as futile where the proposed amended pleading would
not survive a motion to dismiss.  Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.
1991) ("When the plaintiff has submitted a proposed amended complaint, the district judge may
review that pleading for adequacy and need not allow its filing if it does not state a claim upon
which relief can be granted.").  The party opposing the proposed amendment bears the burden of
establishing futility.  Ballard v. Parkstone Energy, LLC, No. 06 CIV. 13099 (RWS), 2008 WL
4298572, at *3 (S.D.N.Y. Sept. 19, 2008).

    **C.**    **Federal Rule of Civil Procedure 9(b)**

        Federal Rule of Civil Procedure 9(b) sets standards for pleading fraud claims and

requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires a plaintiff to "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009) (quoting Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999)).

### D.   Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."  Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."  Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).  However, "[w]here . . . the allegations pled in the complaint are contradicted by documents on which the complaint relies

the reviewing court need not accept as true an allegation pled nor draw inferences in its favor." Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015), aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York, 648 F. App'x 118 (2d Cir. 2016) (citation and quotation marks omitted). A court considering a motion to dismiss may also take judicial notice of publicly filed documents. Vazquez v. City of New York, No. 99 Civ. 4606 (DC), 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000). Finally, as discussed above, claims sounding in fraud must satisfy Federal Rule of Civil Procedure 9(b). Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001).

## II.   ANALYSIS

### A.   Primary Fraud Claims

In his objections, Plaintiff argues generally that "the R&R misstated the circumstances under which a non-speaker can be liable under New York law for 'causing or authorizing' the speaker's fraudulent statements or omissions to a plaintiff, and dramatically departed from the FRCP 12(b)(6) standards for ruling on a motion to dismiss." (Pltf. Obj. (Dkt. No. 172) at 17) To the extent that Plaintiff's objections repeat arguments made before Judge Cave (see, e.g., Pltf. Br. (Dkt. No. 133) at 14-21; Pltf. Reply Br. (Dkt. No. 143) at 8-14), this court will review Judge Cave's recommendation for clear error. To the extent that Plaintiff argues that Judge Cave misconstrued the law, the Court reviews the relevant portion of the R&R de novo. Phillips, 955 F. Supp. 2d at 211; IndyMac Bank, 2008 WL 4810043, at *1.

### 1.   First Cause of Action:  Claim that JP Morgan and Citi Caused or Authorized Millennium's Alleged Fraudulent Statements

Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.

Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citing Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)).

   "The elements of a fraudulent concealment claim under New York law are:  (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages."  De Sole v. Knoedler Gallery, LLC, 139 F. Supp. 3d 618, 640 (S.D.N.Y. 2015) (citation, quotation marks, and alteration marks omitted)).  "A duty to disclose arises where 1) one party has superior knowledge of certain information; 2) that information is not readily available to the other party; and 3) the first party knows that the second party is acting on the basis of mistaken knowledge."  UniCredito, 288 F. Supp. 2d at 497 (citing Banque Arabe, 57 F.3d at 153).

   In determining

> whether reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision.  Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations.
> . . . .
>
> As a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it.
> . . . .
>
> Under New York's contextual approach, the question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive.

De Sole, 139 F. Supp. 3d at 642-43 (citations, quotation marks, and alteration marks omitted).

Finally, with regard to allegations that one party controlled statements issued by another party, "[a] party may be liable for fraud if it 'made' a misrepresentation or 'authorized' or 'caused' a misrepresentation to be made." Woori Bank, 910 F. Supp. 2d at 702 (citation omitted); see also, e.g., Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 828-29 (2016) (discussing third-party reliance in the context of fraud claims).

Contrary to Plaintiff's arguments (see Pltf. Obj. (Dkt. No. 172) at 18), Judge Cave does not stray from these legal principles. Indeed, she applies these principles and concludes that Plaintiff's allegations are not sufficient to demonstrate that JP Morgan and Citi controlled, authorized, or caused Millennium's alleged false statements. (R&R (Dkt. No. 169) at 14-20 (citing PAC (Dkt. No. 134-1) at ¶¶ 12-15, 65, 98-123, 129, 136, 164, 172); see also PAC (Dkt. No. 164) ¶¶ 87, 96-97, 124-127) The Court sees no error in the R&R's conclusions.[9]

---

[9] Plaintiff objects to Judge Cave's handling of an email referenced in the PAC, which Plaintiff alleges shows that JP Morgan and Citi prevented Millennium from disclosing material litigation to the Investors. (Pltf. Obj. (Dkt. No. 172) at 20; see also PAC (Dkt. No. 134-1) ¶¶ 12, 87, 164) The PAC quotes the email, but provides no citation for it. (See PAC (Dkt. No. 134-1) ¶¶ 12, 87) Defendants submitted the email exhibit in connection with their opposition to Plaintiff's motion to amend. (Def. Br. (Dkt. No. 136) at 24; Viapiano Decl., Ex. D (Dkt. No. 137-4) at 7) Judge Cave considered the email and found that it does not support Plaintiff's allegations that JP Morgan and Citi caused or authorized Millennium's misstatements. (R&R (Dkt. No. 169) at 18) Given that the PAC quotes the email, it was proper for Judge Cave to consider it. Bldg. Indus. Elec. Contractors Ass'n, 678 F.3d at 187. Moreover, this Court finds no error in Judge Cave's conclusion that the email contradicts Plaintiff's allegations of control. See IndyMac Bank, 2008 WL 4810043, at *1.

The email at issue concerns the Fee Letter and Commitment Letter and states that Defendants "rejected any possibility of the disclosure of material litigations, requiring instead a clean representation that we [Millennium] are not subject to any material litigation at all." (Viapiano Decl., Ex. D (Dkt. No. 137-4) at 7) It is thus clear that this email pertains to representations and warranties in a Fee Letter and Commitment Letter that Millennium sent to Defendants; the email does not relate to Millennium's communications with Investors. Plaintiff's argument that this email relates to Millennium's communications with the Investors is misleading, as Judge Cave properly found. (R&R (Dkt. No. 169) at 18) This Court notes that this is not the only instance in the PAC in which Plaintiff's allegations are contradicted by the underlying document on which Plaintiff relies. (Id. at 19 (citing PAC (Dkt. No. 134-1) ¶ 121; Viapiano Decl., Ex. E (Dkt. No.

Accordingly, this Court will adopt the R&R's recommendation that leave to amend be denied as to Plaintiff's First Cause of Action, because the proposed amendment would be futile. (R&R (Dkt. No. 169) at 20); see also Phillips, 955 F. Supp. 2d at 211; IndyMac Bank, 2008 WL 4810043, at *1.

### 2.    Plaintiff's Second Cause of Action:  Claim that JP Morgan and Citi Directly Made Misstatements

Plaintiff complains that "[t]he R&R incorrectly finds [that his Second Cause of Action is] supported by only four allegations[,] . . . when in fact there are many allegations that the R&R does not address. . . . However, even the few allegations that the R&R does consider are sufficient to sustain" the Second Cause of Action. (Pltf. Obj. (Dkt. No. 172) at 23)  Because Plaintiff's objections to Judge Cave's findings as to this claim are a mere "'perfunctory response,'' Phillips, 955 F. Supp. 2d at 211, this Court will review the relevant portions of the R&R for clear error. Indymac, 2008 WL 4810043, at *1.

---

No. 137-5) at 2))  Judge Caves goes on to find that "[t]he otherwise conclusory language [in the PAC] does not support Plaintiff's theory that JP Morgan and Citi controlled Millennium's statements."  (Id. at 18)  This Court sees no error in Judge Cave's conclusions.

As to Plaintiff's complaint that Judge Cave's use of the word "control" is improper (Pltf. Obj. (Dkt. No. 172) at 18-19), in context it is clear that Judge Cave uses the word "control" as a proxy for "causing or authorizing" Millennium's false statements.  See, e.g., R&R (Dkt. No. 169) at 17.

Finally, and contrary to Plaintiff's arguments (see Pltf. Obj. (Dkt. No. 172) at 19), Judge Cave correctly distinguished two cases on which Plaintiff relies:  Allstate Insurance Co. v. Countrywide Financial Corp., 824 F. Supp. 2d. 1164 (C. D. Cal. 2011) and Orchard Hotel LLC v. D.A.B. Grp., LLC, 102 N.Y.S.3d 550 (1st Dep't 2019).  (See R&R (Dkt. No. 169) at 18-19)  In Allstate, control over the statement-maker could be found because plaintiff had alleged that the parties were in the same corporate family.  Allstate, 824 F. Supp. 2d at 1186.  And in Orchard Hotel, the company-defendant was alleged to be the sole creator of the document at issue. Orchard Hotel, 172 A.D.3d at 531.  There are no such facts here.

In sum, this Court agrees with Judge Cave's finding that "[t]he PAC makes clear that the underlying fraudulent statements were made by Millennium and the Insiders, not JP Morgan and Citi." (R&R (Dkt. No. 169) at 19 (citing PAC (Dkt. No. 134-1) ¶¶ 12-15, 65, 98-123, 125-27, 129, 136))

In connection with the Second Cause of Action, Judge Cave closely analyzes four alleged misstatements by JP Morgan and Citi.  (R&R (Dkt. No. 169) at 20 (citing PAC (Dkt. No. 134-1) ¶¶ 96-97, 123, 132, 172))  The first alleged misrepresentation pertains to whether "JP Morgan and Citi should have but did not disclose the methodology by which damages might be assessed in the DOJ Investigation."  (Id. at 21)  The second pertains to Citi and JP Morgan's "joint statements" with Millennium in the CIM.  (Id. at 20)  The third concerns "'[w]ords and conduct [that] misrepresented to Investors that conditions precedent for funding in the 2014 Credit Agreement had been satisfied."  (Id. (quoting PAC (Dkt. No. 134-1) ¶ 132))  The fourth allegation concerns "JP Morgan's response to an Investor's question concerning Millennium's litigation exposure."  (Id. at 24)

The first and fourth allegations implicate JP Morgan and Citi's duty to disclose information to the Investors.  In this regard,

> [n]ondisclosure is not actionable under the common law of fraud and deceit unless there is a duty to speak.  That duty may arise when plaintiff and defendant are in a confidential, fiduciary relationship, when defendant has notice that plaintiff is acting upon a mistaken belief as to a material fact, or when defendant resorts to misrepresentation or some other artifice aimed at preventing disclosure of the facts.

Frigitemp Corp., 1974 WL 466, at *5; see also In re UBS AG Sec. Litig., No. 07 CIV. 11225 (RJS), 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012), aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173 (2d Cir. 2014) (finding that a defendant "did not make positive assurances or guarantees that would necessitate additional disclosures"); id. at *32 ("[t]he law in this Circuit is clear that a party can be relieved of a duty to disclose when certain developments affecting a corporation become matters of general public knowledge" (citation and quotation marks omitted)).

Judge Cave concludes that JP Morgan and Citi had no duty to make a complete disclosure about either the DOJ investigation into Millennium or the outcome of that investigation, because (1) JP Morgan and Citi had made no "'assurances or guarantees that would necessitate additional disclosures'"; and (2) DOJ's investigation was public knowledge well before the Syndicated Loan Transaction took place.  (R&R (Dkt. No. 169) at 22 (quoting In re UBS AG Secs. Litig., 2012 WL 4471265, at *31); see id. at 21 (quoting Novak v. Kaskas, 216 F.3d 300, 309 (2d Cir. 2000) for the proposition that "allegations that defendants should have anticipated future events and made certain disclosures earlier than they actua[lly] did do not suffice to make out a claim of securities fraud"); see also id. at 22 (citing In re UBS AG Secs. Litig., 2012 WL 4471265, at *32, and noting that as of 2012 the DOJ's investigation into Millennium was public knowledge, as was the Ameritox litigation); id. at 24 ("As with the first allegation, the Court finds that Plaintiff has failed to allege that JP Morgan omitted any material qualifying information that would render this statement a 'half-truth'" (citation omitted)))  This Court sees no error in Judge Cave's determination.

Judge Cave further concludes that the presence of the JP Morgan and Citi logos on the CIM prepared by Millennium does not render JP Morgan and Citi "joint makers" of the statements in the CIM.  (R&R (Dkt. No. 169) at 18, 23)  Absent a showing that JP Morgan and Citi actually assisted in the drafting of the CIM, or had direct involvement in the everyday business of Millennium, the logos are insufficient to show that JP Morgan and Citi made the statements.  (Id. at 18 (citing In re Virtus Investment Partners Securities Litigation, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016); King Cty., Wash. v. IKB Deutsche Industriebank AG, 751 F. Supp. 2d 652, 658 (S.D.N.Y. 2010)))  This Court finds no error in Judge Cave's reasoning or conclusion.

40

As to Plaintiff's assertion that "Defendants by words or conduct . . .
misrepresented to the Investors that conditions precedent for funding in the 2014 Credit
Agreement had been satisfied" (PAC (Dkt. No. 134-1) ¶ 132), Judge Cave find that this
allegation does not meet the pleading requirement of Rule 9(b).  (R&R (Dkt. No. 169) at 23)  As
discussed above, Rule 9(b) provides a heightened pleading standard for claims sounding in fraud.
Fed. R. Civ. P. 9(b); see also, e.g., Kottler, 607 F. Supp. 2d at 462.  Judge Cave did not err in
concluding that

> [t]o the extent that Plaintiff is attempting to allege that Defendants committed
> fraud by accepting commitments from the Investors despite Defendants'
> knowledge that Millennium had not complied with the representations and
> warranties in the 2014 Credit Agreement, Judge Gardephe's holding that "Section
> 9.3 of the Credit Agreement absolves [JP Morgan] from liability for 'any recitals,
> statements, representations or warranties made by [Millennium][']'" precludes that
> theory of liability.

(R&R (Dkt. No. 169) at 23-24 (quoting Kirschner, 2020 WL 2614765, at *15))

In sum, this Court finds no error in Judge Cave's recommendation that leave to
amend be denied as to the Second Cause of Action on grounds of futility.[10]

---

[10]  This Court finds no merit in Plaintiff's objection that Judge Cave ignored other plausible
allegations in the PAC demonstrating that JP Morgan and Citi were involved with Millennium's
alleged fraudulent statements.  For example, while Plaintiff claims that Judge Cave ignored "the
PAC's plausible allegations that JP Morgan and Citi are primarily liable in fraud for materially
misleading Investors . . . with false ratings" (Pltf. Obj. (Dkt. No. 172) at 23; id. at 24-26), Judge
Cave explicitly addresses the allegedly false ratings (see, e.g., R&R (Dkt. No. 169) at 4, 9-11,
16) as well as a JP Morgan associate's alleged statement that the ratings presentation was "'pulp
fiction.'"  (Id. at 27 (citation omitted))  As discussed above, however, Judge Cave attributes the
alleged misrepresentations to Millennium and concludes that JP Morgan and Citi did not cause
Millennium to make – or make themselves –misstatements or omissions.  (Id. at 14-24)  To the
extent that the JP Morgan associate's "'pulp fiction'" comment supports Plaintiff's scienter
claim, as Judge Cave explains, Plaintiff's primary fraud claim fails because other elements of
this claim are unsatisfied.  (Id. at 27)  In particular, the PAC does not plead facts showing a
connection between Millennium's alleged misrepresentations and JP Morgan or Citi.  To the
extent that Plaintiff alleges that JP Morgan and Citi directly made misstatements, his allegations
are conclusory and do not meet Rule 9(b)'s pleading requirements.  Moreover, some of the

3. <u>**The Effect of the Disclaimers on Plaintiff's Primary Fraud Claims**</u>

Plaintiff argues that Judge Cave "errs in concluding that the Investors' disclaimer of reliance on, and duty owed by, Defendants requires dismissal of the First Cause of Action." (Pltf. Obj. (Dkt. No. 172) at 19)  But Plaintiff's argument is premised on the notion that JP Morgan and Citi "orchestrated" Millennium's misstatements (see id. (citation omitted)), and this Court has found that the PAC does not plead sufficient factual allegations demonstrating that JP Morgan and Citi caused, authorized, or controlled Millennium's alleged misstatements, or that these Defendants directly made misstatements or omissions.

Plaintiff complains that Judge Cave did not follow applicable New York law in concluding that the

> disclaimers preclude (i) the PAC's fraudulent omissions claims against JP Morgan as assignor, (ii) the finding of [a] special relationship between any Defendant and [the] Investors that creates a duty of care necessary for the PAC's negligent misrepresentation claim, and (iii) reasonable reliance by any Investor on Defendants for either intentional or fraudulent misrepresentations claims.

(Id. at 28)

Because Plaintiff repeats in his objections the same arguments he made to Judge Cave, this Court reviews the relevant portions of the R&R for clear error.  Phillips, 955 F. Supp. 2d at 211; IndyMac Bank, 2008 WL 4810043, at *1.

---

allegations cited by Plaintiff in his objections are not attributable to JP Morgan and Citi.  (See, e.g., Pltf. Obj. (Dkt. No. 172) at 26 n.17 (citing PAC (Dkt. No. 134-1) ¶¶ 14-15, 24-32, 75-88, 91-104, 133))

As discussed above, Judge Cave finds – as to the Citi entities – that Plaintiff engaged in improper group pleading.  (R&R (Dkt. No. 169) at 38-39)  The Court finds no error in that conclusion. The fact that the PAC, in certain paragraphs, distinguishes between the Citi entities (Pltf. Obj. (Dkt. No. 172) at 15 n.9) does not excuse Plaintiff's failure to distinguish between the Citi entities in other paragraphs.

Judge Cave concludes that the "disclaimers in the relevant agreements" preclude Plaintiff's primary fraud claims, because they make it impossible for Plaintiff to satisfy two elements of a fraud claim:  a duty to disclose and reasonable reliance.  (R&R (Dkt. No. 169) at 28 (citation omitted))  Judge Cave acknowledges that this Court – in the May 22, 2020 Opinion – finds that the disclaimers are "'fatal to' Plaintiff's claim that the Investors reasonably relied on any alleged misstatements or omissions by the Defendants because the Investors 'specifically agreed that they had, and would continue to, make their own credit decisions and would not rely on the Defendant banks.'"  (Id. (quoting Kirschner, 2020 WL 2614765, at *13))  The PAC does not plead any new allegations that would require a change in that analysis.

As an initial matter, Plaintiff's arguments regarding the disclaimers are predicated on the notion that Defendants participated in the fraud (see, e.g., Pltf. Obj. (Dkt. No. 172) at 29), a proposition that this Court has rejected.

Moreover, Judge Cave properly concludes that Plaintiff's "attempt to circumvent" this Court's May 22, 2020 Opinion by arguing "that the disclaimers do not apply to statements or omissions by Millennium that JP Morgan and Citi orchestrated" is not persuasive, because the PAC does not plead facts demonstrating that these Defendants "orchestrated" the alleged misstatements.  (Id. at 29)  Judge Cave also correctly notes that "Plaintiff's attempt to recharacterize the disclaimers as relating only to 'general risks or conditions, including "credit risk," which are present in every transaction'" (id. (citation omitted)) "runs head-on into" this Court's finding – in the May 22, 2020 Opinion – that "'the contractual disclaimers at issue address the evaluation of credit risk, which is exactly what the alleged misrepresentations relate to.'"  (Id. (quoting Kirschner, 2020 WL 2614765, at *14))  Judge Cave also correctly notes that Plaintiff's "peculiar knowledge" and "special relationship" arguments were rejected in the May

22, 2020 Opinion, and that the PAC does not plead any new allegations that would require a change in the Court's analysis.  (Id. at 29-30 (citing Kirschner, 2020 WL 2614765, at *12-14))

Accordingly, this Court adopts the R&R's recommendation that "the disclaimers provide a separate and independent basis on which to conclude that Plaintiff's primary fraud claims in the PAC are futile."  (Id. at 30)

**B.      Secondary Fraud Claims**

Plaintiff contends that Judge Cave misstates and misapplies New York law as to his Third and Fourth Causes of Action, which allege aiding and abetting fraud and conspiracy to commit fraud.  (Pltf. Obj. (Dkt. No. 172) at 10)  He asserts that Judge Cave – in concluding that Defendants' "silence," absent "a duty to disclose[,] cannot constitute substantial assistance or overt acts" in furtherance of the conspiracy (id. (citing R&R (Dkt. No. 169) at 34-37)) – overlooked the PAC's allegations demonstrating Defendants' active participation in the fraud. (Id. at 10-11)

Judge Cave did not overlook any allegations in the PAC.  To the contrary, she finds that the PAC does not adequately allege the Defendants' active participation in Millennium's alleged fraud.  It is in this context – when beginning her discussion of Plaintiff's aiding and abetting claim – that Judge Cave addresses the impact of the disclaimers and case law holding "that disclaimers similar to those in this case . . . barred aiding and abetting claims."  In this regard, Judge Cave cites Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Insurance Co., 64 A.D. 3d 472 (1st Dept. 2009), in which the court "held that a substantially similar disclaimer providing that the defendant 'did not have a duty to disclose any information relating to the [company] and could not be held liable for failure to disclose any information' precluded a claim for aiding and abetting fraud 'based on allegations of silence or inaction.'"

(R&R (Dkt. No. 169) at 34 (quoting Stanfield, 64 A.D. at 476); see also id. at 34-35 (discussing

Jebran v. LaSalle Business Credit, in which the "the court held that allegations that the defendant

'remained silent regarding a purported misrepresentation in a loan agreement between plaintiffs

and defendant's borrower' [were] 'insufficient to sustain a claim for aiding and abetting' in the

absence of an 'independent duty to the plaintiff'" (quoting Jebran v. LaSalle Business Credit,

LLC, 33 A.D. 6d 424, 424, (1st Dept. 2006))))  Judge Cave concluded that, "[i]n the absence of a

duty to disclose, Plaintiff's aiding and abetting claim is unsustainable. . . . Accordingly, given the

preclusive effect of the disclaimers, any alleged failure to disclose adverse information about

Millennium does not constitute substantial assistance for purposes of an aiding and abetting

claim." (Id. at 35 (citing cases))  Judge Cave's reasoning is discussed in more detail below.

### 1.    Third Cause of Action:  Aiding and Abetting Fraud

In his objections to Judge Cave's findings concerning the Third Cause of Action –

aiding and abetting fraud – Plaintiff contends that Defendants assisted in the planning of

Millennium's alleged fraud, and that accordingly it is irrelevant whether Defendants had a duty

to disclose.  (See, e.g., Pltf. Obj. (Dkt. No. 172) at 11-17; see also, e.g., PAC (Dkt. No. 134-1) ¶

182))  As discussed above, however, Judge Cave correctly found that the PAC does not plead

facts adequate to demonstrate Defendants' direct and active participation in Millennium's

alleged fraud.[11]  (See generally R&R (Dkt. No. 169) at 14-33)  Accordingly, what remains to

---

[11]  In his objections, Plaintiff claims that the role BMO, Sun Trust, Citi, and JP Morgan played in
the creation of the Syndicated Loan Transaction is sufficient to demonstrate that they assisted in
the alleged fraudulent scheme.  (Pltf. Obj. (Dkt. No. 172) at 13-17)  But pleading "'[s]ubstantial
assistance,' a necessary element of aiding and abetting fraud, [requires] more than just [alleging
that a defendant] perform[ed] routine business services for the alleged fraudster." CRT Invs.,
Ltd. v. BDO Siedman, LLP, 85 A.D.3d 470, 472 (1st Dept. 2011) (citation omitted)).  As set
forth below, a plaintiff must show the defendant's actual knowledge of the fraud scheme
and active role in bringing it about.  See Kirschner v. Bennett, 648 F. Supp. 2d 525, 544
(S.D.N.Y. 2009) ("To survive a motion to dismiss, therefore, the [plaintiff] must allege facts

determine is whether Defendants' inaction – their failure to disclose information to the Investors

– provides a sufficient basis for aiding and abetting liability .

           "To establish liability for aiding and abetting fraud [under New York law], [a

plaintiff] must show '(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud;

and (3) that the defendant provided substantial assistance to advance the fraud's commission.'"

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) (citation omitted); Stanfield

Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co., 64 A.D.3d 472, 476 (1st Dept. 2009)

("Substantial assistance exists 'where (1) a defendant affirmatively assists, helps conceal, or by

virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of

the aider/abettor proximately caused the harm on which the primary liability is predicated[.]'"

(citations omitted)).

           Judge Cave does not misstate the law of aiding and abetting (see R&R (Dkt. No.

169) at 33-34), and having found that the PAC does not plead facts demonstrating that the

Defendants provided affirmative assistance to, or directly participated in, Millennium's alleged

fraud, she correctly concludes that the disclaimers – which vitiate any duty to disclose that

---

giving rise to a 'strong inference' of defendant's actual knowledge of the underlying harm, or the
conscious avoidance of the same such that 'it can almost be said that the defendant actually knew
because he or she suspected a fact and realized its probability, but refrained from confirming it in
order later to be able to deny knowledge.'" (quoting Fraternity Fund Ltd. v. Beacon Hill Asset
Mgmt., LLC, 479 F. Supp. 2d 349, 367-68 (S.D.N.Y. 2007))); JP Morgan Chase Bank v.
Winnick, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005) ("'A defendant provides substantial
assistance only if [she] affirmatively assists, helps conceal, or by virtue of failing to act when
required to do so enables [the fraud] to proceed.'" (quoting Nigerian Nat'l Petroleum Corp. v.
Citibank, N.A., No. 98 Civ. 4960(MBM), 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999)))
(first alteration in Winnick); see also Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014) ("[U]nder
New York law, a complaint adequately alleges the knowledge element of an aiding and abetting
claim when it pleads 'not . . . constructive knowledge, but actual knowledge of the fraud as
discerned from the surrounding circumstances.'" (quoting Oster v. Kirschner, 77 A.D.3d 51, 56
(1st Dept. 2010))).

Defendants might otherwise have – render Plaintiff's aiding and abetting claims insufficient. (R&R (Dkt. No. 169) at 14-33; id. at 33-35)

        In reaching this conclusion, Judge Cave relies in part on Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Insurance Co., 64 A.D.3d 472 (1st Dept. 2009). (See id. at 34)  In Stanfield Offshore, plaintiffs – which had been assigned the right to collect debt in connection with loans made to a distressed company – brought an aiding and abetting fraud claim against the lead arrangers of the distressed company's refinancing.  Stanfield Offshore, 64 A.D.3d at 473.  As here, plaintiffs had signed agreements in which they expressly disclaimed any reliance on defendants, and in which they acknowledged that the defendants had no duty to disclose information.  Id. at 474.  A year after the refinancing, the distressed company declared bankruptcy.  Plaintiffs sued, claiming that the company's "solvency was falsely represented, fraudulently inducing them (or their predecessors-in-interest) to sign the loan agreements.  [Plaintiffs claimed that,] . . . by jointly arranging the April 2004 refinancing, [defendants had] aided and abetted [the now-bankrupt company's] fraud and aided and abetted breaches of fiduciary duties."  Id.  As here, plaintiffs alleged that the defendants had "provided" written materials for the distressed company to use in soliciting financing, and that "'[t]he term sheet provided to prospective lenders, including [p]laintiffs and/or their predecessors, plainly stated that [the company's] solvency would be represented in the eventual credit agreements, despite the knowledge of the [d]efendants and [the company] that [the company] was already insolvent and would become more insolvent. . . .'"  Id.

        The First Department concluded that plaintiffs had not adequately pled substantial assistance, despite alleging that the defendants had "assisted in the fraud by contacting prospective investors and distributing information about [the distressed company], as well as by

organizing the refinancing." Id. at 476. This was so because the "the crux of [the] plaintiffs'

claim is that [the defendants] assisted in the alleged fraud by failing to disclose [the distressed

company's] insolvency." Plaintiffs' aiding and abetting fraud claim was found insufficient

"absent a fiduciary duty or some other independent duty owed by [the defendants] to the

plaintiffs[.]" Id. Because the disclaimers in the governing agreements provided that the

defendants had no such duty, plaintiffs' aiding and abetting fraud claim failed. Id.

There was no error in Judge Cave's finding that the disclaimers at issue here

likewise have a "preclusive effect," such that "any alleged failure to disclose adverse information

about Millennium does not constitute substantial assistance for purposes of an aiding and

abetting claim." (R&R (Dkt. No. 169) at 35) Accordingly, this Court will adopt her

recommendation, and leave to amend will be denied as to the aiding and abetting fraud claim, on

grounds of futility.

### 2.   Fourth Cause of Action:  Conspiracy to Commit Fraud

In objecting to Judge Cave's treatment of his conspiracy to commit fraud claim,

Plaintiff once again argues that he adequately pled the Defendants' active involvement in, and

intent to assist, Millennium's alleged fraud scheme. (Pltf. Obj. (Dkt. No. 172) at 11) The overt

acts Plaintiff cites are akin to those discussed above. (Id. at 13-17)

"The elements of a civil conspiracy are (1) an agreement between two or more

persons, (2) an overt act, (3) an intentional participation in the furtherance of a plan or purpose

and (4) resulting damage." UniCredito, 288 F. Supp. 2d at 504 (citing Official Comm. of

Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 Civ. 8688 (WHP), 2002

WL 362794, at *13 (S.D.N.Y. Mar. 6, 2002)).

The R&R's statement of the applicable law (see R&R (Dkt. No. 160) at 36) is

correct, and Judge Cave properly concludes that the PAC does not sufficiently allege an overt

act.  (Id. at 36-37)  There is considerable overlap between the analysis applicable to the aiding

and abetting count and the conspiracy count, because Plaintiff relies on largely the same

allegations in support of each.  (See R&R (Dkt. No. 169) at 33-37; PAC (Dkt. No. 134-1) ¶¶ 182,

190)

The overt act element of the conspiracy claim is critical here, because an "'overt

act' typically must be an affirmative act; mere inaction is insufficient."  Ritchie Capital Mgmt.,

L.L.C. v. Gen. Elec. Capital Corp., 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015) (citations

omitted).  Noting that "the crux of Plaintiff's civil conspiracy claim is Defendants' failure to

disclose [the investigations of and litigation regarding Millennium]," Judge Cave concludes that

"such a failure to act or to disclose is insufficient to constitute an overt act for purposes of

pleading a civil conspiracy claim."  (R&R (Dkt. No. 169) at 37 (citing Ritchie, 121 F. Supp. 3d

at 339).

This Court finds sees no error in Judge Cave's analysis, reasoning, and

conclusion.  Accordingly, the Court will adopt her recommendation that leave to amend be

denied as to the conspiracy claim, on grounds of futility.  (Id.)

C.    **Negligent Misrepresentation Claim**

Plaintiff objects to Judge Cave's findings concerning his negligent

misrepresentation claim.  Citing once again to Kimmell, 89 N.Y.2d 257, Plaintiff argues that the

PAC pleads "[a]ll of the elements of the duty prong of the negligent misrepresentation claim."

(Pltf. Obj. (Dkt. No. 172) at 30 (citing Kimmell, 89 N.Y.2d at 263))  Because Plaintiff repeats

the same arguments that he made to Judge Cave, the applicable portion of the R&R will be

reviewed for clear error.  Phillips, 955 F. Supp. 2d at 211; IndyMac Bank, 2008 WL 4810043, at

*1.

        As an initial matter, Judge Cave applies the correct legal standard, which she

quotes from this Court's May 22, 2020 Opinion:

> Under New York law . . . a party bringing a negligent misrepresentation claim
> must plead facts demonstrating that "(1) the parties stood in some special
> relationship imposing a duty of care on the defendant to render accurate
> information; (2) the defendant negligently provided incorrect information; and (3)
> the plaintiff reasonably relied upon the information given." LBBW Luxemburg
> S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014) (citation
> omitted).  Accordingly, in order for "a party [to] recover in tort for pecuniary loss
> sustained as a result of another's negligent misrepresentations there must be a
> showing that there was either actual privity of contract between the parties or a
> relationship so close as to approach that of privity." Prudential Ins. Co. of Am. v.
> Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992)
> (citations omitted).

(R&R (Dkt. No. 169) at 31 (quoting Kirschner, 2020 WL 2614765, at *12))

        In the May 20, 2020 Opinion, this Court concludes that the disclaimers are "fatal"

to Plaintiff's negligent misrepresentation claim:

> Plaintiff cannot overcome disclaimers in these agreements that are fatal to its negligent
> misrepresentation claim.  Section 9.6 of the Credit Agreement states that Chase, the
> "Administrative Agent[,] shall not have any duty or responsibility to provide any Lender
> with any credit or other information . . . ." (Credit Agreement (Dkt. No. 79-1) § 9.6)
> And Section 9.6 further provides that "[e]ach Lender also represents that it will,
> independently and without reliance upon any Agent or any other Lender, and based on
> such documents and information as it shall deem appropriate at the time, continue to
> make its own credit analysis . . . ." (Id.)  Accordingly, the agreements on which Plaintiff
> relies to claim privity contain a clear disclaimer of the "special relationship" and "duty of
> care" alleged by Plaintiff.

Kirschner, 2020 WL 2614765, at *13.

        This Court agrees with Judge Cave that (1) Plaintiff has not provided any reason

for this Court to ignore the case law holding that "'[g]enerally, banking relationships [of the sort

at issue here] are not viewed as special relationships giving rise to a heightened duty of care.'"

(R&R (Dkt. No. 169) at 32 (quoting <u>Banque Arabe</u>, 57 F.3d at 158)); and (2) "the PAC does not . . . contain any new allegations showing 'actual privity of contract or a relationship so close as to approach that of privity.'" (<u>Id.</u> at 32-33 (quoting <u>Kirschner</u>, 2020 WL 2614765, at *12)) Accordingly, this Court will adopt Judge Cave's recommendation that leave to amend be denied as to Plaintiff's negligent misrepresentation claim, on grounds of futility.

## CONCLUSION

The R&R (Dkt. No. 169) is adopted as set forth above.  Plaintiff's motion to file an amended complaint is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 132), and to close this case.

Dated:  New York, New York
        September 30, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge